937 So.2d 1128 (2006)
Christopher BECKER, Appellant,
v.
Angela JOHNSON, Appellee.
No. 1D05-5909.
District Court of Appeal of Florida, First District.
August 8, 2006.
Rehearing Denied September 27, 2006.
*1129 Christopher Becker, pro se, Appellant.
Bryan S. Gowdy of McGuire Woods LLP, Jacksonville; Kristi Beth Luna of Jacksonville Area Legal Aid, Jacksonville, for Appellee.
PER CURIAM.
Appellant, the husband of appellee, appeals the trial court's Final Judgment of Injunction for Protection Against Domestic Violence with Minor Children After Notice, which prohibited appellant from committing any acts of violence against appellee, from contacting the appellee, and from having custody, possession, or control of any firearms. The order also granted the appellee temporary custody of the parties' minor child. Appellant, a resident of Maryland, argues on appeal that there was an insufficient factual basis for the court to exercise its personal long-arm jurisdiction over appellant, and therefore, the entry of the order violated appellant's due process rights. Appellant's only alleged contacts with the state of Florida are voice and text messages left on appellee's cellular phone while she was present in Florida. Because we agree with appellant, that these contacts are insufficient to establish personal jurisdiction over a non-resident, we hold that the trial court erred in entering its final judgment of injunction against appellant and reverse and vacate this order.

I. BACKGROUND
Before July 19, 2005, both parties lived in Maryland. However, on that date, appellee left with the parties' minor child for Florida without appellant's knowledge. Soon after, on July 25, 2005, appellee filed her Petition for Protection Against Domestic Violence in Florida circuit court. The petition alleged the following:
The [Respondent] is my husband and the father of my daughter. . . . The [Respondent] and I were together off and on for ten years until we separated three years ago.
On July 19, 2005, [my daughter] and I left Maryland without the [Respondent's] knowledge because he threatened to kill me and spend the rest of his life in prison if I ever took [our daughter] from him. Since this date, the [Respondent] has been calling my cell phone and leaving messages and text messages (that I have saved). On July 25, 2005, the [Respondent] left messages on my cell phone stating that he was on his way looking for me; he stated that he will spend the rest of his life looking for me and that he will find me. On July 23, 2005, the [Respondent] left a text message on my cell phone stating, "Thank you. I just think that I am *1130 going crazy. I hear her . . . talking to me. I g[u]ess it's just cause [sic] I miss her!"
Three weeks ago, the [Respondent] busted out my car window with a crowbar as I was sitting inside; glass shattered everywhere, cutting my arm. I made a police report with Maryland State Highway Patrol.
In her petition, appellee requested, among other things, a temporary injunction for protection against domestic violence and temporary custody of the minor child.[1]
Appellant was personally served with the petition in Maryland. On August 29, 2005, appellant filed a motion to quash service of process and dismiss based on lack of personal jurisdiction and subject matter jurisdiction. In the motion, appellant argued that appellee had alleged no facts upon which the trial court could exercise long-arm jurisdiction over appellant. On the same date, a hearing was held on the motion to dismiss and counsel for appellant made a special appearance to argue the motion. This motion was denied on the basis that the allegation made in the petition for injunction, that appellant had made telephone calls into the state of Florida, was "sufficient to enter a no contact Final Injunction for Protection Against Domestic Violence." However, at the hearing, the trial court noted that appellant should file a motion if he wanted the issue reheard or to address any other arguments or issues.
On September 16, 2005, appellant moved for rehearing. Attached to the motion was a sworn affidavit made by appellant which provided that appellee's cellular telephone has a Maryland number and that the messages appellant left on the phone were made before he knew appellee was residing in Florida.[2] After appellee was given a chance to respond[3], the trial court denied appellant's motion for rehearing, stating that "[s]ufficient evidence was presented to provide a basis that Respondent had knowledge of Petitioner's presence in the State of Florida when he made statements that were sufficient to promote fear of harm from Respondent." The trial court found sufficient contacts existed in order to invoke the jurisdiction of the court. On the same day this order was filed, the trial court entered its final order of injunction for protection against domestic violence.

II. PERSONAL JURISDICTION
Section 741.30, Florida Statutes (2005), provides a cause of action for an injunction for protection against domestic violence. This statute requires that a final judgment for injunction for protection against domestic violence shall indicate on its face that, "[t]he court had jurisdiction over the parties and matter under the laws of Florida and that reasonable notice and opportunity to be heard was given to the person against whom the order is sought sufficient to protect that person's right to due process." § 741.30(6)(d)3, Fla. Stat. (2005) (emphasis added). Because appellant, a Maryland resident, was not served *1131 in Florida, personal jurisdiction must be established through section 48.193, Florida Statutes (2005), Florida's long-arm statute. However, to be subject to the jurisdiction of Florida courts pursuant to this statute, due process requires there also be sufficient "minimum contacts" between the forum state and the non-resident defending party "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).
In establishing minimum contacts, the United States Supreme Court has provided a purposeful availment requirement which "ensures that a defendant will not be haled into a jurisdiction solely as a result of `random,' `fortuitous,' or `attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "`[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. at 474-75, 105 S.Ct. 2174 (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The "constitutional touchstone remains whether the defendant purposefully established `minimum contacts' in the forum State." Id. at 474, 105 S.Ct. 2174 (emphasis added).
Appellant's only alleged contacts with Florida were voice and text messages left on appellee's cellular telephone while she was present in Florida. Telephonic, electronic, or written communications to Florida from an outside state can establish personal jurisdiction without the need that the defending party have a physical presence in the state. See Wendt v. Horowitz, 822 So.2d 1252, 1257-58 (Fla.2002) (providing that physical presence is not necessary to establish minimum contacts). However, in this case, there is nothing in the petition filed by appellee alleging that appellant knew appellee was present in Florida at the time he left the messages on her cellular phone. Additionally, appellant stated the following in his affidavit:
The Petitioner's cellular telephone has a Maryland telephone number. Any messages left for her or sent to the Petitioner were sent by me before I was aware that the Petitioner was residing in Florida. I did not know until after the Petitioner had filed her petition that the Petitioner went to Florida after taking our child from Maryland. Since then I have not made any calls or sent any text messages to the Petitioner.
Although appellee argued below that appellant had reason to know she would seek refuge in Florida, appellee never filed an affidavit in response. See Venetian Salami, 554 So.2d at 502 (providing that in order for a respondent to raise the issue of minimum contacts, he must file an affidavit in support of his position, and then the burden is placed upon the petitioner to prove by affidavit the basis upon which jurisdiction may be obtained). Therefore, there is nothing in the record to show that appellant purposefully established minimum contacts with the state of Florida.

III. FULL FAITH AND CREDIT FOR PROTECTION ORDERS
This does not mean that victims of domestic violence are without a remedy when they cross state lines. As part of the Violence Against Women Act of 1994, protection orders entered by one state or Indian tribe complying with the requirements *1132 of 18 U.S.C. § 2265[4] "shall be accorded full faith and credit by the court of another State or Indian tribe . . . and enforced as if it were the order of the enforcing State or tribe." 18 U.S.C. § 2265(a) (2005); see also § 741.315(2), Fla. Stat. (2005) (providing in part, "[p]ursuant to 18 U.S.C. s. 2265, an injunction for protection against domestic violence issued by a court of a foreign state must be accorded full faith and credit by the courts of this state and enforced by a law enforcement agency as if it were the order of a Florida court issued under s. 741.30, s. 741.31, s. 784.046, or s. 784.047").
Protection orders entered by another state are enforceable in Florida without being registered in Florida. 18 U.S.C. § 2265(d)(2) (2005); § 741.315(3), Fla. Stat. (2005) (providing "[n]otwithstandings. 55.505 or any other provision to the contrary, neither residence in this state nor registration of foreign injunctions for protection shall be required for enforcement of this order by this state and failure to register the foreign order shall not be an impediment to its enforcement"). Additionally, if the victim registers a foreign protection order with an enforcing state, the party against whom a protection order has been issued cannot be notified that the order has been registered with that state unless requested by the victim. 18 U.S.C. § 2265(d)(1) (2005).
Therefore, if appellee had obtained a protection order from Maryland complying with 18 U.S.C. § 2265, then Florida would be obligated to give full faith and credit to the Maryland order. See Steckler v. Steckler, 921 So.2d 740, 743 (Fla. 5th DCA 2006) (providing that a protective order entered by a North Dakota court satisfying the provisions of 18 U.S.C. § 2265 was entitled to full faith and credit); see generally Shah v. Shah, 184 N.J. 125, 875 A.2d 931, 942 n. 7 (2005).

Conclusion
However, in the present case, because it was not shown that appellant had sufficient minimum contacts with Florida to satisfy the requirements of due process, the trial court erred in entering the final judgment of injunction for protection against domestic violence against appellant. Accordingly, under the circumstances of the present case, we must reverse and vacate the trial court's order.
REVERSED.
WOLF, PADOVANO and POLSTON, JJ., concur.
NOTES
[1] Appellee also requested temporary child support and temporary alimony. However, appellee later abandoned these requests.
[2] In this case, appellee raises an argument regarding the timing of appellant's filed affidavit because the affidavit was attached to appellant's motion for rehearing and not to appellant's motion to dismiss. We reject this argument without further comment and consider on appeal the points raised in the affidavit.
[3] Appellee's response argued, among other things, that appellant should have known appellee could have sought refuge within the state of Florida, and that appellant's statements that he would find appellee provided a basis for the court to assume jurisdiction.
[4] The statute requires the following:

A protection order issued by a State or tribal court is consistent with this subsection if
(1) such court has jurisdiction over the parties and matter under the law of such State or Indian tribe; and
(2) reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process. In the case of ex parte orders, notice and opportunity to be heard must be provided within the time required by State or tribal law, and in any event within a reasonable time after the order is issued, sufficient to protect the respondent's due process rights.
18 U.S.C. § 2265(b) (2005).