2014 VT 100

# Neal Fox v. Eugene Fox

[106 A.3d 919]

No. 13-147

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed August 14, 2014

*Tavian M. Mayer* of *Mayer & Mayer*, South Royalton, and *Katherine Z. Pope* (On the Brief) of *Law Office of Katherine Pope*, Tunbridge, for Plaintiff-Appellee.

*Cabot Teachout* of *DesMeules, Olmstead & Ostler*, Norwich, for Defendant-Appellant.

*Michele Olvera*, Supervising Attorney, and *Ariana Barusch*, Law Clerk (On the Brief), Montpelier, for Amicus Curiae Vermont Network Against Domestic and Sexual Violence.

¶ 1. **Robinson, J.** This case requires us to evaluate the constitutional requirements for personal jurisdiction over a nonresident defendant in the context of a relief-from-abuse (RFA) order.

Nonresident defendant appeals the family court order granting plaintiff's request for a final RFA order. Defendant argues: (1) the family court lacked personal jurisdiction over him to issue the final order, (2) defendant and plaintiff are not family members for purposes of the domestic abuse prevention statute, (3) plaintiff failed to establish that a final RFA order was necessary, and (4) the court erred in finding that defendant engaged in stalking, as defined in Vermont's stalking statute. We conclude that the trial court lacked personal jurisdiction to enter a final RFA order, and reverse.

¶ 2. Plaintiff Neal Fox's brother adopted defendant Eugene Fox when defendant was an infant. On April 6, 2012, defendant, a New Hampshire resident now in his sixties, and plaintiff, a Vermont resident, attended a probate court hearing in Manchester, New Hampshire. Following the hearing, defendant followed plaintiff to his car and proceeded to punch, kick, and step on plaintiff. Plaintiff was hospitalized as a result of the encounter.

¶ 3. Plaintiff filed a complaint for relief from abuse with the family division of the Windsor Superior Court. The trial court granted a temporary RFA order, which was extended multiple times. Before the hearing on the final RFA order, defendant filed a motion to dismiss for lack of jurisdiction, arguing that the Vermont court lacked personal jurisdiction over him to hear the RFA case. He further argued that even if the court had jurisdiction, the uncle-nephew relationship did not constitute "family" for purposes of the domestic abuse prevention statute. The court denied defendant's motion, interpreting 15 V.S.A. § 1102 to establish jurisdiction in RFA cases even in the absence of minimum contacts between defendant and the forum state. The court also concluded that, while "family" is not defined by the relevant statute, except to include reciprocal beneficiaries not at issue in this case, the blood relation between plaintiff and defendant's adoptive father is a sufficient family relationship to trigger the protections of the statute.

¶ 4. During the final RFA hearing on March 25, 2013, defendant stipulated on the record at the final RFA hearing that abuse had occurred. Plaintiff testified that, at some point during the incident in New Hampshire, defendant made note of plaintiff's Vermont license plate and stated that he was recording the license plate in case he needed it again. Defendant admitted that he made note of plaintiff's license plate, but he could not recall what he said to

plaintiff. Defendant also stated that he understood that plaintiff had changed his license plate since the incident. Outside of court appearances, plaintiff has had no contact with defendant since the incident.

¶ 5. At the close of the RFA hearing, defendant renewed his motion to dismiss for lack of personal jurisdiction. The court denied the motion to dismiss on the ground that personal jurisdiction for the final RFA order was not materially different from the question of jurisdiction at the temporary order stage. The court then granted plaintiff's request for a final RFA order that prohibited defendant from coming within 300 feet of plaintiff or his home, vehicle or place of employment, except in connection with a court appearance. In that order, the court made a finding that defendant had stalked plaintiff as defined in 12 V.S.A. § 5131(6). The court denied defendant's motion to reconsider his motion to dismiss, and defendant appealed.

¶ 6. In the meantime, defendant, a New Hampshire resident, was charged criminally in New Hampshire and pled guilty to simple assault. In February 2013, the New Hampshire court sentenced defendant to twelve months of incarceration, with the entire sentence suspended contingent on good behavior and compliance with certain conditions. The conditions on defendant's suspended sentence included a no-contact provision stating that defendant "shall have no contact with [plaintiff] or members of his immediate family, including wife and children. No contact means direct, indirect, through third parties or through social media."

¶ 7. The threshold questions are whether the trial court must have personal jurisdiction over a nonresident defendant in order to issue a final RFA order and, if so, whether it had jurisdiction in this case. Defendant argues that the trial court had no jurisdiction to issue an RFA order against him because he has no contacts with Vermont whatsoever, and his connections therefore do not satisfy the minimum contacts requirement of the U.S. Constitution, Vermont's long-arm statute, or Vermont Rule of Civil Procedure 4(e).

¶ 8. Plaintiff and amicus curiae Vermont Network Against Domestic and Sexual Violence both cite decisions from other jurisdictions holding that a court is not required to have personal jurisdiction over a defendant in order to issue an abuse-prevention order against him or her. They also argue that, to the extent personal jurisdiction is required, it is present in this case for a

host of reasons. Specifically, plaintiff argues that Vermont's abuse prevention statute itself confers the necessary jurisdiction. That statute provides:

> Proceedings under this chapter may be commenced in the county in which the plaintiff resides. If the plaintiff has left the residence or household to avoid abuse, the plaintiff shall have the option to bring an action in the county of the previous residence or household or the county of the new residence or household.

15 V.S.A. § 1102(c). In addition, plaintiff and amicus curiae argue that given the facts of this case, including defendant's express notation of plaintiff's license plate number at the time he assaulted plaintiff, the court's exercise of jurisdiction was consistent with the requirements of fairness at the core of constitutional doctrine concerning personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

¶ 9. Our review of the trial court's legal analysis concerning personal jurisdiction is nondeferential and plenary. *Godino v. Cleanthes*, 163 Vt. 237, 239, 656 A.2d 991, 993 (1995). It is well settled that Vermont courts must have both statutory and constitutional power to exercise personal jurisdiction over a nonresident defendant. Vermont's long-arm statute, 12 V.S.A. § 913(b), permits state courts to exercise jurisdiction over nonresident defendants "to the full extent permitted by the Due Process Clause" of the U.S. Constitution. *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 40, 572 A.2d 1382, 1385 (1990). Accordingly, although the long-arm statute and the U.S. Constitution provide separate and distinct limitations on the authority of Vermont courts to enter judgments, the statutory and constitutional analyses in this case are one and the same.

I.

¶ 10. Courts from other jurisdictions have taken a range of approaches to challenges to personal jurisdiction in the context of requests for abuse-prevention orders filed against out-of-state defendants. Many of these cases involve a complainant who, having fled to the forum state, seeks protection in the forum state's courts in response to abuse that occurred in another state, although some involve plaintiffs who, like plaintiff in this case, are domiciliaries of the forum state.

¶ 11. Some courts have held that personal jurisdiction is a necessary prerequisite to issuing an abuse-prevention order against a nonresident, and have concluded that they did not have personal jurisdiction over the defendants. For example, a Florida appeals court vacated a final injunction against domestic violence issued against an estranged husband in Maryland after the wife fled from Maryland to Florida following husband's violent acts and threats. *Becker v. Johnson*, 937 So. 2d 1128, 1132 (Fla. Dist. Ct. App. 2006). Explaining that "[t]he constitutional touchstone remains whether the defendant *purposefully established* 'minimum contacts' in the forum State," the court concluded that the husband's calls and text messages to the wife's cell phone, when her phone number was a Maryland number and he had no knowledge that she was in Florida at the time, were insufficient to confer jurisdiction on Florida's courts. *Id.* at 1131 (quotations omitted). The court noted that its decision did not leave the wife without an enforceable remedy in Florida; if she got an order in Maryland that was compliant with the federal Violence Against Women Act, 18 U.S.C. § 2265 (2005), that order would be enforceable in Florida. *Id.* at 1131-32; see also *T.L. v. W.L.*, 820 A.2d 506, 515-16 (Del. Fam. Ct. 2003) (holding that nonresident husband lacked minimum contacts to make it reasonable for him to appear and defend against request for protective order in Delaware, and noting that wife could have sought a remedy in her state of prior residence).

¶ 12. In 2001, in a closely divided and pivotal decision, the Iowa Supreme Court held that a court does not need personal jurisdiction over a nonresident defendant in order to issue a protective order on behalf of a domiciliary. *Bartsch v. Bartsch*, 636 N.W.2d 3, 6 (Iowa 2001). In that case, a wife who was an Iowa resident, having moved to Iowa from Utah, sought a protective order against her husband, who by that time was living in Colorado. The court explained that the U.S. Supreme Court has recognized that not all exercises of a state's subject matter jurisdiction require personal jurisdiction over a defendant, and that judgments which merely determine the civil *status* of an inhabitant, such as a divorce judgment when one of the parties is a domiciliary of the issuing state, may be issued without personal jurisdiction. *Id.* (discussing *Pennoyer v. Neff*, 95 U.S. 714 (1877)); see also *Williams v. North Carolina*, 317 U.S. 287, 298-99 (1942) ("Thus it is plain that each state, by virtue of its command over its

domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent."). Recognizing that courts have applied this "status" exception to the due process requirement of personal jurisdiction to custody and parentage determinations, the Iowa court approvingly quoted a Texas court's conclusion that "'a family relationship is among those matters in which the forum state has such a strong interest that its courts may reasonably make an adjudication affecting that relationship even though one of the parties to the relationship may have had no personal contacts with the forum state.'" *Bartsch*, 636 N.W.2d at 8-9 (quoting *In re S.A.V.*, 837 S.W.2d 80, 84 (Tex. 1992)). Noting that the protective order at issue did not purport to impose a personal judgment against the defendant, the court concluded:

> If a court may constitutionally make orders affecting marriage, custody, and parental rights without personal jurisdiction of a defendant, it certainly should be able to do what the court did here — enter an order protecting a resident Iowa family from abuse.

*Id.* at 10.

¶ 13. Several years later, the New Jersey Supreme Court rejected the Iowa court's rationale, but likewise concluded that, subject to certain limitations, a New Jersey court could issue a temporary abuse-prevention order, even in the absence of personal jurisdiction over the nonresident defendant. *Shah v. Shah*, 875 A.2d 931, 940 n.5, 942 (N.J. 2005). The New Jersey court drew a distinction "between prohibitory orders that serve to protect the domestic violence victim, and affirmative orders that require that a defendant undertake an action." *Id.* at 939. In that case, a wife in Illinois fled to New Jersey — a state with which the husband had no ties or contacts — and requested a temporary, and later a final, restraining order against the husband. The New Jersey Supreme Court upheld those aspects of the lower court's temporary order that were "prohibitory" in nature, explaining that a prohibitory order "provides the victim the very protection the law specifically allows, . . . prohibits the defendant from engaging in behavior already specifically outlawed . . . [and] does not implicate any of defendant's substantive rights." *Id.* However, the court concluded that "New Jersey courts lack the power to enter an

order requiring the performance of any affirmative act by a defendant over whom [personal] jurisdiction cannot be asserted." *Id.* at 940. Accordingly, the court vacated those aspects of the temporary order requiring the husband to pay the wife money and return her possessions, as well as to turn over any firearms, but upheld the temporary order insofar as it barred defendant from contacting the wife. *Id.* at 940-41.

¶ 14. The court also concluded that although the temporary order was constitutional to the extent that it included only prohibitory relief, New Jersey courts could *not* issue a final restraining order. *Id.* at 940. The court explained that a final restraining order would, under New Jersey law, include some affirmative requirements such as relinquishment of firearms and a surcharge, and could well have "severe collateral consequences" such as entry in a central registry. *Id.*

¶ 15. The following year, a Kentucky appeals court followed New Jersey's lead in the case of *Spencer v. Spencer*, 191 S.W.3d 14 (Ky. Ct. App. 2006). In that case, a wife fled her home in Oklahoma to Kentucky, where she got a restraining order against her husband. The court concluded that "the distinction made by New Jersey's highest court between prohibitory and affirmative orders represents the fairest balance between protecting the due process rights of the nonresident defendant and the state's clearly-articulated interest in protecting the plaintiff and her child against domestic violence." *Id.* at 19. Accordingly, the court upheld the restraining order's requirement that the husband not approach his wife, but struck down the provisions restricting the husband's disposition of the parties' property and possession of firearms, as well as the provision ordering him to attend domestic violence counseling. *Id.* The *Spencer* court did not address the New Jersey court's conclusion that its rationale supported entry of a temporary, but not a final, abuse-prevention order.

¶ 16. Two New England states have merged these two lines of authority in articulating their own rationales for excluding abuse-prevention orders from the personal jurisdiction requirements of the Due Process Clause. In *Caplan v. Donovan*, 879 N.E.2d 117 (Mass. 2008), the Massachusetts Supreme Judicial Court considered a case in which a woman fled her longtime partner in Florida and got an abuse-prevention order in Massachusetts. Citing *Bartsch*, the Massachusetts Supreme Court described the abuse-prevention order as a declaration of the wife's protected status,

and likened the ruling to a determination of marital status, or of custodial rights to a child — both judgments that can be issued in the absence of personal jurisdiction. *Id.* at 123. However, citing *Shah,* the court concluded that any order issued in the absence of personal jurisdiction cannot "impose any personal obligations on a defendant, and is limited to prohibiting actions of the defendant." *Id.* at 124. The court explained that this "limitation prevents a court from issuing any affirmative order in which it attempts to 'exercise its coercive power to compel action by a defendant.'" *Id.* (quoting *Spencer,* 191 S.W.3d at 18). Like the *Spencer* court, the *Caplan* court upheld the no-contact aspect of the abuse-prevention order, struck down the requirement that defendant relinquish his firearms as beyond the Massachusetts court's jurisdiction, and did not address the New Jersey court's conclusion that the court lacked authority to enter a final order, given the direct and collateral consequences of a final order. *Id.* at 125. Two years later, the New Hampshire Supreme Court followed suit in *Hemenway v. Hemenway,* 992 A.2d 575, 580-82 (N.H. 2010).

¶ 17. ■ Although the "status" rationale and the "it's-a-mere-prohibitory-order" rationale are analytically distinct, they are connected. Even if we found the "status" analogy persuasive — a question we do not reach — a court's authority in the absence of personal jurisdiction over the defendant would be limited to a declaration of status; it does not extend to affirmative relief. See *Caplan,* 879 N.E.2d at 123-24; see also *Kulko v. Superior Court,* 436 U.S. 84, 91 (1978) ("It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant."); Restatement (Second) of Judgments § 7 cmt. a (1982) ("Jurisdiction to establish or terminate a status should be distinguished from . . . jurisdiction to enforce liability arising from a status, for example, liability for child support.").

¶ 18. This is why the "prohibitory order" rationale becomes more critical. The argument is that an order that merely directs a defendant to stay away from and not contact a plaintiff does not actually impose a personal obligation or duty in favor of the plaintiff, and does not amount to enforcement of a liability arising from a status. As the New Jersey Supreme Court observed, such an order "prohibits the defendant from engaging in behavior

already specifically outlawed . . . [and] does not implicate any of defendant's substantive rights." *Shah*, 875 A.2d. at 939.

¶ 19. ■ We need not determine whether, as the New Jersey Supreme Court concluded, a court may issue a temporary abuse prevention order without personal jurisdiction on the theory that such an order is merely prohibitory; we agree with the New Jersey court that a court cannot issue a *final* abuse prevention order without personal jurisdiction over a defendant. A final abuse prevention order has significant impact on a defendant's substantive rights. An order prohibiting defendant from contacting plaintiff, and in this case approaching within 300 feet of plaintiff, plaintiff's home, car, or place of employment, does more than prohibit defendant from engaging in behavior already specifically outlawed. It prohibits him from engaging in behavior that would be entirely legal but for the court's order. And it backs up the restrictions with the prospect of criminal prosecution within Vermont or beyond. See 13 V.S.A. § 1030(a) (providing that person who commits act in violation of order issued under chapter 21 of Title 15 shall be imprisoned for not more than one year, fined not more than $5,000, or both); 18 U.S.C. § 2262(b) (listing federal penalties for persons who travel in interstate commerce with intent to violate protection order); 8 U.S.C. § 1227(a)(2)(E)(ii) (making violation of order involving "protection against credible threats of violence, repeated harassment, or bodily injury" a deportable offense); see also *State v. Goyette*, 166 Vt. 299, 302, 691 A.2d 1064, 1066 (1997) ("[A] relief-from-abuse order may prohibit otherwise legitimate conduct to prevent future abuse, and that conduct may serve as the basis of a criminal conviction for violating the order.").

¶ 20. ■ In so restricting defendant's conduct, the order restrains his liberty. That is the whole point; in light of past abuse, and reasonable fear of future abuse, plaintiff seeks final, as opposed to provisional, protection in the form of restraints on defendant's conduct above and beyond the baseline requirements of the law. Such restraints may be warranted and appropriate, but the suggestion that they are not restraints, or do not affect defendant's substantive rights, is at odds with the terms of the order on its face. The restraint on a defendant accompanying any purported declaration of plaintiff's status as "a protected person" is an "enforcement of a liability" arising from such a status —

exactly what a court lacking personal jurisdiction cannot order. Restatement (Second) of Judgments § 7 cmt. a.

¶ 21. ■ As Justice Carter of the Iowa Supreme Court explained in his dissent from the *Bartsch* decision:

> The majority apparently believes that the unavailability of collateral relief against foreign domiciliaries in status adjudications only extends to money judgments. That is not correct. The court in *Kulko* described the protection much more broadly: "The Due Process Clause of the Fourteenth Amendment operates as *a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants.*" The "rights or interests" of [defendant] that have been adversely affected by the district court's judgment are substantial. There has been a direct invasion of his liberty interest. In addition, there are collateral consequences of a lasting nature.

636 N.W.2d at 11-12 (citing *Kulko*, 436 U.S. at 91, and 18 U.S.C. § 922).

¶ 22. ■ In addition to the restraint on liberty reflected in the RFA order are the substantial collateral consequences that flow from the order. Although Vermont law does not automatically require a defendant in an RFA case to forfeit his or her firearms, federal law does. 18 U.S.C. § 922(g)(8). This federal consequence is not merely incidental; the RFA order before us identifies this consequence on its face.

¶ 23. We recognize that in the absence of an exemption from the constitutional requirement of personal jurisdiction for a final RFA order, in cases where a victim flees to Vermont and Vermont has no personal jurisdiction over the alleged abuser, "the unpalatable choices remaining are either to require the victim of abuse to return to the State in which the abuse occurred in order to obtain an effective abuse prevention order" or to wait for the abuser to engage in conduct directed at the victim in Vermont that gives rise to personal jurisdiction. *Caplan*, 879 N.E.2d at 123. A victim of domestic abuse can secure an abuse-prevention order that is enforceable in Vermont by petitioning in a state that does have personal jurisdiction over the alleged abuser. See 18 U.S.C. § 2265 (providing for interstate enforcement of qualifying abuse-prevention

orders). But doing so may in some cases be logistically challenging, psychologically difficult, or even personally dangerous.

¶ 24. ■ On the other hand, a contrary rule gives rise to unpalatable possibilities of its own. If we were to accept plaintiff's argument, a Vermonter with no connection to, for example, California could be forced to choose between traveling from Vermont to California to defend against civil charges of domestic violence and accepting the consequences of a judicial finding of abuse and an abuse-prevention order in California because an alleged victim of domestic violence chose to relocate to California. Such a scenario challenges "traditional notions of fair play and substantial justice" protected by the personal jurisdiction requirement pursuant to the Due Process Clause. *Int'l Shoe Co.*, 326 U.S. at 316.

¶ 25. ■ For the foregoing reasons, we decline to carve out a blanket exemption from the constitutional due process requirement of personal jurisdiction for requests for final RFA orders.

## II.

¶ 26. ■ ■ Having concluded that requests for final RFA orders are not subject to a blanket exemption from the requirement of personal jurisdiction, we now consider whether the court had personal jurisdiction over defendant in this case.* The Due Process Clause allows personal jurisdiction over a defendant in any state where the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation omitted). Minimum contacts are a surrogate for Due Process Clause protections, and ensure that individuals will have " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.' " *Burger King Corp. v. Rudzewicz*, 471 U.S.

---

*At the outset, we reject plaintiff's statutory argument. Vermont's RFA statute cannot extend the court's jurisdiction beyond the bounds of federal due process. See *Kulko*, 436 U.S. at 91 ("The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants."); see also *In re R.W.*, 2011 VT 124, ¶ 23, 191 Vt. 108, 39 A.3d 682 (recognizing that Vermont courts can exercise personal jurisdiction where there is both statutory and constitutional power to do so). Moreover, 15 V.S.A. § 1102(c) is fundamentally about venue, not jurisdiction. It does not purport to expand Vermont's jurisdiction over nonresident defendants.

462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). The focus of the minimum contacts inquiry is on the relationship among the defendant, the forum state, and the cause of action. *Shaffer*, 433 U.S. at 204.

¶ 27. ■ A court may exercise either general or specific jurisdiction over a nonresident defendant. General jurisdiction applies to suits not arising out of or related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). By contrast, a court may exercise specific jurisdiction where a defendant has "purposefully directed . . . activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (quotations and citation omitted). Nobody suggests that Vermont has general jurisdiction to adjudicate claims against defendant. Plaintiff introduced no evidence that defendant owned property in Vermont, did business in Vermont, visited Vermont, or had any contact with the state or its residents. The question in this case is whether Vermont has specific jurisdiction because the litigation arises from defendant's personally directing his activities toward Vermont.

¶ 28. ■ Courts have properly asserted jurisdiction over nonresident defendants in a variety of cases where defendants are deemed to have "fair warning" of the possibility of being called before a state's courts on account of the defendant's own activities directed at the forum state. *Burger King Corp.*, 471 U.S. at 472. A corporation that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" may be sued in that state when those products subsequently injure consumers; "a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story," and parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the other state's jurisdiction in connection with the consequences of their activities. *Id.* at 473 (quotations omitted).

¶ 29. ■ The unifying feature of all these cases is that the defendant directed activity into the forum state, or toward its residents in that state. The U.S. Supreme Court has made it clear

that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475 (quotations omitted). The Supreme Court has expressly rejected the suggestion that foreseeability of causing *injury* in another state is itself a sufficient benchmark for exercising personal jurisdiction; instead, the Court has explained, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 474 (quotations omitted).

¶ 30. We conclude that defendant's assault of plaintiff in New Hampshire does not by itself support personal jurisdiction for a final RFA order in Vermont. By attacking plaintiff in New Hampshire, defendant did not avail himself of any benefits or protections of Vermont's laws, or subject himself to the authority of Vermont's courts. The fact that plaintiff happens to be a Vermont resident is not itself enough to give Vermont courts jurisdiction over a New Hampshire defendant for an assault in New Hampshire.

¶ 31. Plaintiff argues that defendant did intrude into Vermont by taking note of plaintiff's Vermont license plate number in connection with the assault, and then later acknowledging, once he was in court, that he understood that plaintiff had changed his license plate. Plaintiff's theory is that these two acts by defendant were tantamount to stalking plaintiff *in Vermont.* The trial court made no finding that defendant physically came to Vermont and stalked plaintiff; that defendant ever contacted plaintiff while plaintiff was in Vermont in order to stalk him, or for any purpose at all; or that defendant contacted any other person or entity in Vermont for the purpose of threatening or stalking plaintiff. Nor was there evidence to support any such findings. On this record, we cannot conclude that plaintiff met his burden of establishing that defendant was subject to the court's jurisdiction. See *Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp.*, 921 F. Supp. 1206, 1209 (D. Vt. 1996) (clarifying that plaintiff bears burden of demonstrating sufficient contacts with state to support personal jurisdiction over defendant).

¶ 32. ██ In light of defendant's stipulation that he abused plaintiff, and the relative proximity of New Hampshire, this may seem like a harsh result. But the due process requirement that a court have personal jurisdiction before entering a judgment against a defendant applies to those defendants with meritorious defenses, as well as those without. And it applies to defendants in New Mexico as well as New Hampshire.

¶ 33. Because we conclude that the trial court lacked the personal jurisdiction required to issue a final RFA order, we need not reach the other issues defendant raises in his appeal.

*Reversed.*