NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 43

No. 21-AP-284

| | |
|---|---|
| Katlyn Bacigalupo | Supreme Court |
| | |
| v. | On Appeal from Superior Court, Windham Unit, Family Division |
| | |
| Daniel Bacigalupo | May Term, 2022 |

Michael R. Kainen, J.

Laura Bierley, Vermont Legal Aid, Inc., Burlington, for Plaintiff-Appellee.

Aimee R. Goddard of Buehler & Annis, PLC, Brattleboro, for Defendant-Appellant.

Breanna Weaver and Harrison Drapo, Montpelier, for Amicus Curiae Justice for Victims Legal
  Clinic of Vermont Network Against Domestic and Sexual Violence.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **CARROLL, J.**   This appeal concerns whether a non-resident plaintiff may obtain a relief-from-abuse (RFA) order under Vermont's Abuse Prevention Act.  The family division concluded that plaintiff mother, a resident of Massachusetts, could obtain both an emergency and final RFA order against defendant father, a Vermont resident.  We affirm.

I. Background

¶ 2.     The family division found the following.  Mother and father were married in Massachusetts in 2015.  They remain married.  Together, they have a daughter, age six, and a son, age five.  The family's relationship has been affected at times by father's violent behavior and by

mother's substance abuse. Since 2019, father has lived in Dummerston, Vermont, while mother has maintained residency in Massachusetts.

¶ 3. In early 2017, father strangled mother and mother blacked out. On a different occasion father punched mother. Mother did not report these two incidents to the police. In November 2017, father attempted to cut mother's wedding ring off her finger with a pair of tin snips, punched her in the face, slammed her head against the floor, and threatened to kill her. Mother reported this incident, and father was prosecuted for felony domestic violence, and his contact with mother and the children was limited by a Massachusetts court. There were other times when father became angry at mother. Father yelled at mother and called her names; he threw objects at mother in anger, including an ironing board, which did not hit her. Father once drew back his fist as if to hit mother.

¶ 4. In June 2018, father sought emergency custody of the children in Massachusetts. He alleged that the Massachusetts Department of Children and Families had investigated mother for child neglect and that mother had been arraigned on a DUI, second offense, in early July 2018. In 2019, the Massachusetts court held that despite father's history of domestic violence, mother's substance abuse impaired her ability to parent. The court awarded custody to father and ordered that mother's time with the children be restricted to supervised visits. The order also allowed father to move with the children to Vermont.

¶ 5. Soon thereafter, father moved to Vermont. Mother visited the children in Vermont, and on several occasions, father drove the children to Massachusetts to visit mother. When mother and father were getting along, mother had father's permission to spend the night at his house. Mother's time with the children was often unsupervised by father. They often spent time with the children together. Between January and April 2021, mother and father reconciled their relationship.

¶ 6. By May 2021, this reconciliation had ended. Father told mother she could no longer see the children during unsupervised periods. However, mother still apparently spent considerably more time with the children than the Massachusetts court order allowed.

¶ 7. Father subjected the children to corporal punishment and inappropriate outbursts of anger. Father spanked son several times in front of mother. In October 2020, father slapped son's leg hard enough to leave a welt. In both March and May of 2021, father spanked daughter leaving handprints. In the summer of 2021, father became angry at daughter and pulled a water bottle out of her mouth with enough force to make daughter's tooth bleed. On different occasions, father threatened to strike the children with his belt. While mother never saw father use the belt, father told mother that he had followed through with the threats before.

¶ 8. In August 2021, mother filed a complaint for an emergency RFA order in Windham County, Vermont. The family division issued a temporary RFA order for mother and the children the same day. The order prohibited father from having any contact with mother and the children and granted temporary custody to mother.

¶ 9. Father moved to dismiss the emergency RFA order. He contended that because mother is a resident of Massachusetts, she could not proceed under the Abuse Prevention Act. Father cited 15 V.S.A. § 1102(c), which provides that a plaintiff "may" file an RFA petition in the county where the plaintiff "resides." Alternatively, § 1102(c) provides that a plaintiff who has relocated due to abuse may file in the county of the plaintiff's new residence or household, or in the county of the previous residence or household. Id. § 1102(c). Father argued that the more specific venue requirements in § 1102(c) supersede the civil division's general requirements in 12 V.S.A. § 402(a), which provides that actions "shall be brought in the unit in which of the parties resides, if either resides in the State . . . [or] [i]f neither party resides in the State, the action may be brought in any unit." Unlike § 402(a), § 1102(c) does not state that mother may proceed in father's county of residence. Furthermore, father maintained that the term "resides"—which is

3

undefined in the Abuse Prevention Act—is synonymous with domicile. Because mother is not domiciled in Vermont, father argued that § 1102(c) prohibits her from filing for an RFA order in Vermont. Accordingly, father believes the family division lacked subject-matter jurisdiction to issue the RFA order.

¶ 10. The family division denied father's motion. It disagreed that § 1102(c) requires mother to be a Vermont resident to obtain an RFA order. The family division interpreted § 1102(c) as expanding § 402(a)'s venue options for mother's convenience, rather than § 1102(c) entirely displacing § 402(a). Accordingly, the family division held that mother could maintain the RFA action in father's county of residence because it was an appropriate forum under § 402(a). The family division therefore found it unnecessary to reach father's arguments about what constitutes "residency" under § 1102(c).

¶ 11. The family division held several contested hearings on the petition which culminated on October 20, 2021. On November 5, the court issued an extended temporary RFA order on behalf of the children with an April 2022 expiration date. It concluded that the children were at "risk of harm" if left in father's custody. The court granted mother custody of the children and awarded father supervised visits at mother's residence in Massachusetts. The family division stipulated the RFA order for the children would either: (1) lapse upon an order by a Massachusetts court regarding custody of the children, or (2) become permanent upon a Massachusetts court order concluding that Vermont would be the more appropriate forum.

¶ 12. On the same date, the court issued a final RFA order for mother.[1] The court found that father's past abuse toward mother—especially the serious harm inflicted in 2017—made it reasonable for mother to fear "imminent bodily harm." Father's yelling, threatening, throwing an ironing board, and drawing back his fist as if to punch mother—in conjunction with the adverse

_____

[1] The orders were supported by separate written findings of fact and conclusions of law dated November 4, 2021.

4

custody order—led the court to conclude that mother's fear of father's anger warranted the court's protection.

¶ 13.    Father appeals the family division's final RFA order for mother.  He renews his argument that the family division lacked subject-matter jurisdiction because mother is not a Vermont resident.  He maintains that under 15 V.S.A. § 1102(c), only those domiciled in Vermont may petition the family division for an RFA order.  Finally, father contends that the family division erred by finding that 15 V.S.A. § 1102(c) was merely another venue option for mother in addition to 12 V.S.A. § 402(a).

## II.  Discussion

### A.  Standard of Review

¶ 14.    Whether the family division has subject-matter jurisdiction to issue a final RFA order is a legal question we review de novo.  In re K.S., 2021 VT 51, ¶ 20, __ Vt. __, 260 A.3d 387.  "Because the jurisdiction of the trial courts is shaped by the legislature, subject[-]matter jurisdiction is a question of statutory interpretation."  Id.  We review issues of statutory interpretation de novo.  In re Guardianship of S.O., 2021 VT 89, ¶ 13, __ Vt. __, 268 A.3d 49.

### B.  The Abuse Prevention Act

¶ 15.    The Abuse Prevention Act "provides a private remedy by permitting a family or household member to seek a protective order against another family or household member when abuse has occurred and there is a danger of further abuse."  Hinkson v. Stevens, 2020 VT 69, ¶ 56, 213 Vt. 32, 239 A.3d 212 (Reiber, C.J., dissenting); see 15 V.S.A. §§ 1101(1), 1103(a), (c).  Its purpose is "to protect victims from future abuse, rather than to hold perpetrators liable for past acts of violence," by providing "immediate relief" through "inexpensive and uncomplicated proceedings."  Raynes v. Rogers, 2008 VT 52, ¶ 8, 183 Vt. 513, 955 A.2d 1135 (quotation omitted).  The RFA order is "a unique legal remedy . . . aimed at ending the cycle of domestic violence before it escalates."  Id.

5

### 1. Section 1102(c)

¶ 16.   Section 1102(c) provides:

> Proceedings under this chapter may be commenced in the county in which the plaintiff resides.  If the plaintiff has left the residence or household to avoid abuse, the plaintiff shall have the option to bring an action in the county of the previous residence or household or the county of the new residence of household.

15 V.S.A. § 1102(c).  Father argues that because mother is a resident of Massachusetts, the family division lacked subject-matter jurisdiction over the case because the first sentence of § 1102(c) provides that a plaintiff "may" commence an action "in the county in which the plaintiff resides." Father contends that the more specific § 1102(c) controls over the more general venue statute, 12 V.S.A. § 402.  Therefore the "may" in the first sentence is permissive only within § 1102(c) itself and does not provide a choice between § 1102(c) and § 402, as the family division concluded. Father argues that, because the family division is a court of limited jurisdiction, if mother does not meet the statutory requirements for venue and subject-matter jurisdiction, the family court's RFA order is void.

¶ 17.   We agree with father that, as the more specific provision, § 1102(c) controls over § 402.  We also agree that § 1102(c) addresses subject-matter jurisdiction as well as venue. However, we hold that § 1102(c) gives the family division subject-matter jurisdiction over mother's action because she brought the action in an appropriate venue.  Therefore, we affirm the family division's conclusion on different grounds.  See In re J.L., 2007 VT 32, ¶ 6, 181 Vt. 615, 928 A.2d 474 (mem.) ("[W]e may affirm a decision of a trial court on any legal basis supported by the record, even if it was not the theory relied on by the trial court.").

¶ 18.   "We apply the long-standing rule of statutory construction that where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls."  Town of Brattleboro v. Garfield, 2006 VT 56, ¶ 10, 180 Vt. 90, 904 A.2d 1157. We have held that a specific venue statute "cannot lightly be ignored."  Gerdel v. Gerdel, 132 Vt.

58, 63, 313 A.2d 8, 11 (1973). Because the Legislature "has seen fit to provide for the place[s]" to bring RFA actions "by a statute entirely separate from the venue statute," we conclude that § 1102(c) controls here, not 12 V.S.A. § 402. Id. at 62, 313 A.2d at 10. Therefore, mother must demonstrate she meets the procedural requirements in § 1102(c) for the family division to have subject-matter jurisdiction over this action.

¶ 19. To analyze the requirements in § 1102(c), we begin with the plain meaning of the statute. Forrett v. Stone, 2021 VT 17, ¶ 14, 214 Vt. 283, 256 A.3d 585 (per curiam). However, if we find ambiguity, "we discern legislative intent by considering the statute as a whole, reading integral parts of the statutory scheme together." Id. (quotation omitted). RFA orders are "remedial in nature, and . . . focus solely on the plaintiff's need for immediate and prospective protection from the defendant." Raynes, 2008 VT 52, ¶ 13. Accordingly, we liberally construe any ambiguity in the Abuse Prevention Act "to suppress the evil and advance the remedy intended by the Legislature." Id. ¶ 15 (quotation omitted).

¶ 20. As an initial matter, we disagree with father that the terms "resides" and "residence" in § 1102(c) are synonymous with domicile. Residence is not defined in the Abuse Prevention Act. See 15 V.S.A. § 1101. Father relies heavily on divorce cases to argue that the Legislature intended the Act to require a plaintiff to be domiciled in Vermont. The Abuse Prevention Act is a remedial statute, however, and the statutes governing divorce are not. See Buxton v. Buxton, 148 Vt. 22, 24, 527 A.2d 660, 662 (1987) ("[T]here is no necessary relationship between the abuse prevention provisions of chapter 21 and the statutes and rules governing divorce proceedings."). Requiring plaintiffs to demonstrate domicile, which we have previously noted is "troublesome" because it concerns "states of mind," Conley v. Crisafulli, 2010 VT 38, ¶ 8, 188 Vt. 11, 999 A.2d 677 (quotation omitted), is entirely at odds with a statute intended to provide "immediate relief"

7

through "inexpensive and uncomplicated proceedings."[2]  Raynes, 2008 VT 52, ¶ 8 (quotation omitted).

¶ 21.    In fact, we discern no residency requirement at all in the Abuse Prevention Act. Section 1103, which governs the issuance of RFA orders, provides that "[a]ny family or household member may seek relief from abuse by another family or household member."   15 V.S.A. § 1103(a) (emphasis added).  Read as an integrated whole, the Act focuses on providing plaintiffs with immediate relief against defendants over whom Vermont has personal jurisdiction and ensures that the counties where plaintiffs may proceed with an RFA petition have some connection to the plaintiff.  See Fox v. Fox, 2014 VT 100, ¶ 19, 197 Vt. 466, 106 A.3d 919 ("[A] court cannot issue a final abuse prevention order without personal jurisdiction over defendant." (emphasis omitted)).   However, the Legislature has defined what can constitute that connection with extraordinary breadth.  See 15 V.S.A. § 1101(2) (defining "household member" as "persons who, for any period of time, are living or have lived together, are sharing or have shared occupancy of a dwelling, are engaged in or have engaged in a sexual relationship, or minors or adults who are dating or who have dated"); see also infra, Section II.C.

¶ 22.    In any case, we need not determine precisely what the Legislature intended by "residence" in § 1102(c)—beyond it does not mean domicile—because mother does not argue that she had a residence in Vermont.  Mother argues that she is a household member and that § 1102(c) permits her to proceed as such.  We agree.

---

[2]  Indeed, we have found no abuse-prevention statute in the United States with a domicile requirement.

## 2. Household Member

¶ 23.    Though the Legislature used the term "household" three times in § 1102(c)'s second sentence, it did not add "household" to the first sentence.  Accordingly, read on its face without reference to the rest of the section or statute, § 1102(c)'s first sentence could be interpreted to mean that any plaintiff who is not a resident of a county in Vermont may not proceed under the Abuse Prevention Act.  As demonstrated above, the Legislature did not intend such a narrow construction.   Thus, we conclude § 1102(c) is ambiguous because it supports at least two reasonable interpretations.  See Forrett, 2021 VT 17, ¶ 18 (explaining statute is ambiguous when it is capable of more than one reasonable interpretation).

¶ 24.    Given the purposes of the Abuse Prevention Act described above, we conclude that the term "household" is implied in § 1102(c)'s first sentence.  See id. ¶ 15 (holding that Abuse Prevention Act "must be liberally construed to suppress the evil and advance the remedy intended by the Legislature" (quotation omitted)).  It makes little sense to provide expanded venue options for plaintiffs fleeing a household but not for those who do not flee and wish to proceed where the household is located.  Fleeing a residence or household is merely one response to the "evil" of domestic abuse; that a plaintiff does not flee is not necessarily evidence that there is no abuse.  See Raynes, 2008 VT 52, ¶ 13 (emphasizing that RFA proceedings represent departure from perspectives of domestic violence at common law).  The important consideration is that the Abuse Prevention Act gives a plaintiff "immediate and prospective protection from the defendant" wherever they find themselves as long as the plaintiff is a household member pursuant to § 1101. Id. Thus, "may" in § 1102(c)'s first sentence refers to either the county where the plaintiff resides or the county where the household is located.

¶ 25. Our conclusion is reinforced by several considerations. First, we cannot imagine a scenario in which the Legislature intended to restrict a plaintiff's venue options relative to the general venue statute so long as the defendant is a Vermont resident. See Fox, 2014 VT 100, ¶ 30 (holding that trial court lacked personal jurisdiction over out-of-state defendant to enter final RFA order). If a plaintiff has not fled to avoid abuse and willingly submits to a forum where the defendant is present, potentially at the plaintiff's own risk, § 1102(c) does not prohibit the plaintiff from proceeding in that forum. See id. ¶ 23 (explaining that situation in which plaintiff submits to defendant's home forum "may in some cases be logistically challenging, psychologically difficult, or even personally dangerous"); see also Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (citing factors weighing against dismissal for forum non conveniens including "the plaintiff's residence in relation to the chosen forum, the availability of evidence to the forum district, the defendant's amenability to suit in the forum district, [and] the availability of appropriate legal assistance"). In sum, if the Abuse Prevention Act provides expanded opportunities for plaintiffs fleeing abuse in potentially inconvenient counties for a defendant, it follows that if the plaintiff chooses to file in the defendant's home county, the plaintiff may proceed under the Act.

¶ 26. Second, a survey of other states indicates that mother would be allowed to file for an RFA order where father lived in almost every jurisdiction whose abuse-prevention statute specifically addresses venue. Many jurisdictions provide that a plaintiff may file either where the plaintiff resides or the defendant resides, or where the abuse occurred, or both, and four appear to have no venue restrictions at all. [3]

¶ 27. Third, the presence of a "safe-harbor" provision in § 1102(c)'s second sentence, strongly indicates that the Legislature did not intend to narrow mother's venue options with respect

_____

[3] For example, the following sample includes states where a plaintiff may file a petition where the plaintiff or defendant reside: Alabama, Ala. Code § 30-5-3(c)(1) (2019); Arkansas, Ark.

10

to the location of the household. Safe-harbor provisions provide plaintiffs with expanded opportunities to file abuse-prevention petitions in counties to which they have fled. For example, courts have issued RFA orders where a plaintiff's new location is a safe house, see Root v. Toney, 841 N.W.2d 83, 93 (Iowa 2014); a family member's house, Vera V. v. Seymour S., 154 N.E.3d 937, 939 n.3 (Mass. App. Ct. 2020); a place where the plaintiff has not lived for ten months, M.B. v. J.B., 13 N.E.3d 1009, 1013-14 (Mass. App. Ct. 2014); or a place where the plaintiff has "lived" for only one day, Spencer v. Spencer, 191 S.W.3d 14, 16 (Ky. Ct. App. 2006). If the Legislature intended to provide similar safe-harbor options to plaintiffs under the Abuse Prevention Act—and we express no opinion about these particular scenarios—it surely did not intend to limit venue to residences in the absence of flight from abuse. Abuse-prevention statutes protect a plaintiff's ability to obtain an RFA order irrespective of where plaintiffs who are household members find themselves.

### C. Mother is a Household Member

¶ 28. Father stipulated at oral argument that mother was a household member but noted that § 1102(c) does not contain the term "household member," only "household." The Legislature did not define "household" in § 1101. Accordingly, he contends, the definition of "household member" does not apply to § 1102(c). We are not persuaded. A household is comprised of

---

Code Ann. § 9-15-201(b) (West 2009); Colorado, Colo. Rev. Stat. Ann. § 13-14-104.5(3) (West 2018); Delaware, Del. Code Ann. tit. 10 § 1042(c) (West 2017); Florida, Fla. Stat. Ann. § 741.30(d), (j) (West 2021); Georgia, Ga. Code Ann. § 19-13-2 (West 1997).

A sample of states permitting plaintiffs to file where the abuse occurred include: Indiana, Ind. Code Ann. § 34-26-5-4(b)(3) (2019); Louisiana, La. Stat. Ann. § 46:2133(B)(3) (2020); Maryland, Md. Code Ann., Fam. Law § 4-504 (West 2016); Minnesota, Minn. Stat. Ann. § 518B.01 (2021); Mississippi, Miss. Code Ann. § 93-21-5(2) (West 2020).

States with no apparent venue restrictions include: Illinois, 750 Ill. Comp. Stat. Ann. 60/202 (West 2020); Kansas, Kan. Stat. Ann. § 60-3103 (West 2012); North Dakota, N.D. Cent. Code Ann., § 14-07.1-05 (West 1989); Pennsylvania, 23 Pa. Stat. and Cons. Stat. Ann. § 6103(b)(1) (West 2006).

household members, the definition of which the Legislature has provided. If the Legislature had used "household members" in § 1102(c), the statute would be nonsensical: "If the plaintiff has left the residence or household [member] to avoid abuse, the plaintiff shall have the option to bring an action in the county of the new previous residence or household [member] or the county of the new residence or household [member]." Moreover, § 1103 provides that "[a]ny family or household member may seek relief from abuse by another family or household member on behalf of himself or herself . . . ." This too would be a meaningless provision if "household member" did not refer to the term "household" in § 1102(c). See In re Albert, 2008 VT 30, ¶ 10, 183 Vt. 637, 954 A.2d 1281 (mem.) ("We . . . presume that the Legislature intended for the statutory language to render results that are not absurd."). Mother is a household member, as is father, and the household was located in Windham County. Thus, mother satisfied the venue requirements in § 1102(c) and the family division had subject-matter jurisdiction over the proceedings.

¶ 29.    Given our conclusion, we do not address the constitutional arguments presented by amicus Justice for Victims Legal Clinic of Vermont Network Against Domestic and Sexual Violence. See State v. Schenk, 2018 VT 45, ¶ 10, 207 Vt. 423, 190 A.3d 820 ("[O]ur policy [is] to decide cases on nonconstitutional grounds if possible, and to adopt a construction of the statute that avoids constitutional deficiencies.").

Affirmed.

FOR THE COURT:

_____
Associate Justice

12