IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-82

No. 307PA20

Filed 13 August 2021

MARISA MUCHA

v.

LOGAN WAGNER

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right of a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) of a unanimous decision of the Court of Appeals, 271 N.C. App. 636 (2020), affirming orders entered on 13 June 2018 and 27 June 2018 by Judge Debra S. Sasser in District Court, Wake County.

*Robinson, Bradshaw & Hinson, P.A., by Erik R. Zimmerman, Andrew R. Wagner, and Jazzmin M. Romero, for plaintiff-appellee.*

*Parrott Law, PLLC, by Robert J. Parrott Jr., for defendant-appellant.*

EARLS, Justice.

Before the advent of mobile telephone technology and before call forwarding was available, a person making a telephone call would know the approximate physical location of anyone who answered the phone based on the area code and prefix of the telephone number they dialed. However, the number of landlines is rapidly dwindling, and a person's phone number alone no longer provides a reliable indication

of that person's location.[1] As a result, it is important to determine whether, and under what circumstances, a telephone call to a cell phone can subject the caller to personal jurisdiction in the state where the phone happens to be when it is answered.

¶ 2    Specifically, in this case, we examine whether the District Court, Wake County, could exercise personal jurisdiction over the defendant, Logan Wagner, in a proceeding initiated by the plaintiff, Marisa Mucha, who was seeking to obtain a domestic violence protection order (DVPO). The only contact Wagner had with North Carolina was a series of phone calls he made to Mucha's cell phone on the day she moved to the State. We conclude that Wagner did not have the requisite minimum contacts with North Carolina because he did not purposefully avail himself of the benefits and protections of North Carolina's laws. Therefore, we hold that the trial court could not exercise personal jurisdiction over Wagner consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. We reverse the decision of the Court of Appeals which affirmed the trial court's decision to exercise jurisdiction, and we vacate the trial court's order for lack of personal jurisdiction over Wagner.

---

[1] According to the National Center for Health Statistics, "[t]he second 6 months of 2016 was the first time that a majority of American homes had only wireless telephones." Stephen J. Blumberg & Julian V. Luke, *Wireless Substitution: Early Release of Estimates From the National Health Interview Survey, July-December 2016*, U.S. Department of Health and Human Services Centers for Disease Control and Prevention (May 2017).

## I.    Factual Background

Wagner and Mucha were previously in a romantic relationship for some time. After the relationship ended, Mucha—who was attending college in South Carolina— told Wagner—who lived in Connecticut—never to contact her again. Wagner did not abide by Mucha's request. While Mucha was living in South Carolina, Wagner sent her a letter and a text message. His unwelcome efforts to reach Mucha culminated on 15 May 2018. That afternoon, unbeknownst to Wagner, Mucha moved from South Carolina to North Carolina after finishing her college semester. That evening, Mucha received twenty-eight phone calls from an unknown number. When she answered one of the calls, Wagner identified himself, and Mucha hung up. Wagner kept calling. Mucha picked up again and told Wagner to stop. Wagner left a voice message. When Mucha listened to the message, she suffered a panic attack. The next day, she filed a pro se complaint and motion for a DVPO in District Court, Wake County.

Wagner's attorney entered a limited appearance for the purposes of contesting the trial court's personal jurisdiction and filed a motion to dismiss. According to Wagner, the Due Process Clause of the Fourteenth Amendment forbade the trial court from exercising personal jurisdiction over him because he neither "affirmatively direct[ed] any phone calls [to] North Carolina" nor "purposefully avail[ed] himself of

any protections of the State."[2] Wagner contended that because he did not know or have any reason to know Mucha would be located in North Carolina when he called her, he lacked "fair warning that he might be required to defend himself there."

The trial court denied Wagner's motion to dismiss and, after a hearing during which Mucha and two witnesses testified, entered a DVPO. Wagner appealed solely the trial court's order finding personal jurisdiction. The Court of Appeals unanimously affirmed. According to the Court of Appeals, because Wagner "knew that [Mucha's] semester of college had ended and she may no longer be residing [in South Carolina] . . . his conduct—purposefully directed at Mucha—was sufficient for him to reasonably anticipate being haled into court wherever Mucha resided when she received the calls." *Mucha v. Wagner*, 271 N.C. App. 636, 637–38 (2020).

## II.   Personal Jurisdiction Analysis

The reason Wagner's phone calls to Mucha brought him into contact with North Carolina is because Mucha had traveled here, just hours before Wagner made the calls to her cell phone. Although Wagner may have known or had reason to know that Mucha would be leaving South Carolina at the end of her semester, there is nothing in the record to support the inference that Wagner knew or had any reason

---

[2] Wagner failed to preserve his challenge to the trial court's jurisdiction as exceeding the scope of North Carolina's long-arm statute, N.C.G.S. § 1-75.4, which he attempted to raise for the first time on appeal. Therefore, we assume for purposes of resolving this case that the trial court's exercise of personal jurisdiction was authorized by the long-arm statute.

to know that Mucha was present in North Carolina.[3] Both the trial court and the Court of Appeals ignored this distinction. In doing so, the courts below failed to adhere to the fundamental due-process principle that there is no personal jurisdiction over a defendant who has not initiated "certain minimum contacts with [the forum state]." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

¶ 7        In examining a defendant's connection to the forum state, the Due Process Clause "requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). Here, Wagner's only connection with the State of North Carolina resulted from "random, isolated, or fortuitous" events. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). Under these circumstances, the Due Process Clause does not permit a North Carolina court to exercise personal jurisdiction over Wagner.

## A. Personal jurisdiction under the Due Process Clause

¶ 8        "The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). "The primary concern of the Due Process Clause as it relates to a court's jurisdiction over a nonresident defendant is the protection of 'an

---

[3] Mucha's argument to the contrary is that Wagner "had reason to know that Mucha had recently moved" because she was a college student, "[s]pring semesters at college typically end by mid-May[,] . . . [a]nd many college students move to other states during the summer." At most, this supports the inference that Wagner should have known Mucha might not be located in South Carolina, but it does not support the inference that Mucha had reason to know where specifically Mucha had travelled.

individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.' " *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302 (2020) (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985)).

¶ 9        In order for a state court to exercise jurisdiction over a defendant who is not subject to general jurisdiction in the forum state[4] and who is not present in the forum state, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Although this canonical formulation has been tested over the years, the United States Supreme Court has continued to emphasize that the due process inquiry is "focused on the nature and extent of '*the defendant's* relationship to the forum State.' " *Ford Motor Co.*, 141 S. Ct. at 1024 (emphasis added) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017)). Courts must not "improperly attribute a plaintiff's forum connections to the defendant and make those connections decisive in the

---

[4] There is no disputing that Wagner is not subject to general jurisdiction in North Carolina because his "affiliations with the State are [not] so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Instead, we consider only whether Wagner is subject to specific jurisdiction, because the proceeding at issue "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (quoting *Rush v. Savchuk*, 444 U.S. 230, 332 (1980)).

¶ 10 To ascertain whether a defendant's contacts are of the frequency and kind necessary to surpass the "minimum contacts" threshold, courts must first examine whether the defendant has taken "some act by which [he or she] *purposefully avails* [himself or herself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 255, 253 (1958). To establish that a defendant has purposefully availed himself or herself of the benefits and protections of the laws of a forum state, the plaintiff has the burden of proving that the defendant "deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (second alteration in original) (quoting *Walden*, 571 U.S. at 285). The focus on the defendant's conduct reflects one of the core concerns underpinning personal jurisdiction doctrine and the Due Process Clause, "treating defendants fairly." *Id.* at 1025. Due process requires "that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign," so that they may "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp.*, 471 U.S. at 472 (cleaned up) (first quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 297 (1980)).

¶ 11 Under the "purposeful availment" test, the absence of any evidence suggesting Wagner had any reason to know Mucha was in North Carolina at the time he called her is dispositive. In prior cases where this Court has found a defendant's one-time contacts sufficient to create specific personal jurisdiction in North Carolina, the defendant knew or reasonably should have known that by undertaking some action, the defendant was establishing a connection with the State of North Carolina. This awareness—whether actual or imputed—is what permits a court in North Carolina to exercise judicial authority over the nonresident defendant.

¶ 12 For example, in *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, the defendant was a clothing distributor with its principal place of business in New York who entered into a contract to purchase clothes from a North Carolina manufacturer. 318 N.C. 361, 362–63 (1986). When a dispute regarding the contract arose, the plaintiff sued the defendant in a North Carolina court, and the defendant moved to dismiss for lack of personal jurisdiction, which the trial court denied. *Id.* at 364. On appeal, this Court concluded that the defendant had purposefully availed itself of the benefits and protections of the laws of North Carolina when it entered into the contract with the clothing manufacturer. *Id.* at 367. Yet it was not the existence of the defendant's contract with a North Carolina resident which alone sufficed to "establish the necessary minimum contacts with this State." *Id.* at 367. It was the fact that the defendant had "made an offer to [a] plaintiff whom defendant *knew to be located in*

*North Carolina.*" *Id.* (emphasis added). Because the defendant "was told that the shirts would be cut in North Carolina, and defendant also agreed to send its personal labels to plaintiff in North Carolina for plaintiff to attach to the shirts[, d]efendant was thus aware that the contract was going to be substantially performed in this State." *Id.*

¶ 13 Similarly, in *Beem*, we held that it was permissible for a North Carolina court to exercise personal jurisdiction over a nonresident corporate defendant because the defendant's "sole representative came to North Carolina to open a bank account on behalf [of] the partnership that [it] subsequently used for [ ] business activities [with the plaintiff], and he also traveled to this state on three separate occasions to discuss [business]." *Beem USA Ltd.-Liab. Ltd. P'ship*, 373 N.C. at 306. Thus, in both *Tom Togs* and *Beem*, it was fair to exercise personal jurisdiction over the defendant because there was evidence indicating the defendant knew (or should have known) that conduct directed at the plaintiff was conduct directed at the State of North Carolina.

¶ 14 The significance of a defendant's awareness of the connection between the conduct the defendant chooses to engage in and the forum state is also reflected in United States Supreme Court precedent. The Due Process Clause requires evidence indicating that a defendant was on notice he or she could be subjected to suit in the specific state in which the plaintiff seeks redress, not merely in any state besides the

one in which the defendant is domiciled. For example, in *Keeton*, the fact that the defendant "produce[d] a national publication aimed at a nationwide audience" did not, on its own, necessarily give rise to personal jurisdiction in every state in the nation. *Keeton v. Hustler Mag., Inc.*, 465 U.S. at 781. Instead, the New Hampshire court seeking to exercise personal jurisdiction over the defendant could do so because the defendant had "continuously and deliberately exploited the New Hampshire market," as evidenced by the "substantial number of copies . . . regularly sold and distributed" in the state. *Id.* There was "no unfairness in calling [the defendant] to answer for the contents of that publication" in a jurisdiction it had purposefully sought to enter into. *Id.*

¶ 15     The United States Supreme Court's more recent "stream of commerce" decisions also support Wagner's position. These cases have drawn a distinction between conduct targeted at states generally and conduct targeted at the specific forum state seeking to exercise jurisdiction over the defendant. Thus, the Court has held that a forum state may exercise personal jurisdiction over a defendant who "delivers its products into the stream of commerce with *the expectation* that they will be purchased by consumers in the forum State," *World-Wide Volkswagen Corp.*, 444 U.S. at 297–98 (emphasis added), but not over a defendant who "directed marketing and sales efforts at the United States" without "engag[ing] in conduct purposefully directed at [the forum state]." *J. McIntyre Mach., Ltd.*, 564 U.S. 885–86.

¶ 16     Concurring separately in *J. McIntyre*, Justice Breyer explained that jurisdiction did not arise even when the defendant "kn[ew] or reasonably should [have] know[n] that its products [we]re distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states." *Id.* at 891 (Breyer, J., concurring) (cleaned up) (quoting *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 76–77 (2010)). Rather, the defendant must have targeted the forum state specifically. Finding personal jurisdiction without evidence that the defendant intentionally targeted the forum state would "abandon the heretofore accepted inquiry of whether, focusing upon the relationship between 'the defendant, the *forum*, and the litigation,' it is fair, in light of the defendant's contacts *with that forum*, to subject the defendant to suit there." *Id.* (quoting *Shaffer*, 433 U.S. at 204).

¶ 17     These cases establish two important principles. First, conduct directed at a person is not necessarily the same as conduct directed at a forum state. Second, a defendant's knowledge that a plaintiff could be somewhere other than the state in which the plaintiff typically resides is not sufficient to establish personal jurisdiction in any state where the plaintiff happens to be. Applying these principles to this case, Wagner has not purposefully availed himself of the benefits and protections of the laws of North Carolina. While Wagner purposefully directed conduct at Mucha, he had no way of knowing that in doing so he was establishing any connection with the State of North Carolina. There is no evidence in the record to support the conclusion

that he could have "reasonably anticipate[d] being haled into court" in North Carolina. *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

¶ 18        In the alternative, Mucha asserts that "purposeful availment" is not the proper test for determining personal jurisdiction when the defendant is accused of committing an act of domestic violence, which Mucha analogizes to an intentional tort. As she correctly notes, many of the cases applying the purposeful availment test "involved business-related claims and conduct," such as those arising from contract disputes or allegedly defective products. Mucha argues that instead of the "purposeful availment" test, the right standard is "purposeful direction" because Wagner has undertaken an intentional course of conduct which violated North Carolina law. According to Mucha, the purposeful direction standard differs from the purposeful availment test because "the question is not whether an intentional tortfeasor *availed* himself of the forum state's laws. It is whether he *obstructed* the forum state's laws by directing his tortious conduct at the forum."

¶ 19        Even if the "purposeful direction" standard applies—and assuming "purposeful

direction" and "purposeful availment" impose distinct requirements[5]—Mucha still cannot prevail. Mucha's argument, in essence, is that a defendant is subject to personal jurisdiction in a state whenever (1) he intentionally engages in conduct, (2) which "obstructs" the laws of the forum state, and (3) injures someone in the forum state. This proposed test overlooks the requirement that the defendant himself have established minimum contacts with the forum state, which necessitates the defendant having some reason to know his conduct will bring him into contact with the particular forum state, a requirement which is found in numerous cases resolving intentional tort claims. *See, e.g.*, *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010) (holding that there was personal jurisdiction because defendants "specifically aimed their tortious conduct at [plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the brunt of the injury there") (cleaned up).

¶ 20 For jurisdiction to vest in a particular forum state under the purposeful direction test, the defendant must "expressly aim" his or her conduct at that state.

---

[5] It is not clear that they do. In *Burger King*, which involved a tortious interference claim, the Court explained that the Due Process Clause's " 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); then quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 414 (1984)). The Court then proceeded to analyze whether the defendant had maintained the requisite "minimum contacts" with the forum state. *Id.* at 474. This suggests that "purposeful availment" and "purposeful direction" are largely interchangeable.

*Calder v. Jones*, 465 U.S. 783, 789 (1984). This requirement demands proof the defendant had some reason to foresee which state's laws would be obstructed and where harm would occur when choosing to engage in the conduct purporting to vest the forum state's courts with jurisdiction. *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Marten v. Godwin*, 499 F.3d 290, 297–98 (3d Cir. 2007) ("To establish that the defendant expressly aimed his conduct [at the forum state], the plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum." (cleaned up) (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (interpreting *Calder* to "require[ ] that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant *knows is likely to be suffered in the forum state*.") (emphasis added).

The act of calling a cell phone number registered in one state does not automatically vest jurisdiction in any state where the recipient of the call happens to be located at the time the call is made. For example, in *Long v. Vitkauskas*, the Mississippi Supreme Court held that a Mississippi trial court lacked personal

jurisdiction over a defendant in an alienation of affection action when the only evidence establishing a connection between the defendant and the state was "an extensive log of telephone calls and text messages between [the defendant] and [a Mississippi resident]." 287 So. 3d 171, 174 (Miss. 2019). Even though the defendant did not dispute that he had made phone calls to a Mississippi resident who was located in Mississippi when she received the calls, the court was found to lack jurisdiction because the Mississippi resident had a cellphone number registered in Tennessee and there was no other evidence the defendant was aware of her Mississippi residency. *Id.; see also Hood v. Am. Auto Care, LLC*, No. 18-CV-02807-PAB-SKC, 2020 WL 1333091, at *4 (D. Colo. Mar. 23, 2020) (holding that a Colorado court lacked personal jurisdiction over a telemarketing company who called a Colorado resident on a cell phone with a Vermont area code in the absence of "evidence that would allow the Court to infer that defendants knew that his Vermont phone number was associated with a Colorado resident").

¶ 22    Finally, Mucha argues that due process permits "a lesser showing of minimum contacts than would otherwise be required" to establish personal jurisdiction in a business dispute given the State's significant interest in protecting its residents against domestic violence. *See Burger King Corp.*, 471 U.S. at 477. No one disputes the magnitude of the State's interest in enabling its residents to live free from harassment, abuse, and violence. To be sure, DVPOs implicate very different

governmental interests than the need for orderly resolution of contract disputes. Nevertheless, other state courts examining personal jurisdiction claims in the context of domestic violence orders have not jettisoned the purposeful availment requirement. *See Fox v. Fox*, 2014 VT 100, ¶ 30, 197 Vt. 466, 106 A.3d 919 (concluding that Vermont trial court lacked personal jurisdiction to enter protective order because "defendant did not avail himself of any benefits or protections of Vermont's laws, or subject himself to the authority of Vermont's courts"); *Shah v. Shah*, 184 N.J. 125, 139, 875 A.2d 931, 940 (2005) (concluding that the trial court lacked personal jurisdiction over a defendant who "has not 'purposefully availed' himself of the laws of New Jersey").

¶ 23        Indeed, under similar circumstances, a Florida intermediate appellate court concluded its courts lacked personal jurisdiction to enter a protective order against a defendant who sent voice and text messages to the plaintiff's cellphone while she was located in Florida, because the plaintiff had a Maryland number and "there [was] nothing in the petition . . . alleging that [the defendant] knew [the plaintiff] was present in Florida at the time he left the messages on her cellular phone." *Becker v. Johnson*, 937 So. 2d 1128, 1131 (Fla. Dist. Ct. App. 2006). While these decisions are not binding on this Court, they are instructive as to how other courts have given meaning to Due Process Clause protections. We conclude that even taking into account the nature of the important governmental interest in preventing domestic

violence, minimum contacts are required for personal jurisdiction to vest over a nonresident defendant, and there are not sufficient minimum contacts absent proof that the defendant purposefully established a connection with the forum state.

¶ 24        Under the Due Process Clause, the "constitutional touchstone" is always "whether the defendant *purposefully* established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. 462 at 474 (emphasis added) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). To hold that the magnitude of the State's interest justifies an exercise of personal jurisdiction in the absence of proof the defendant "purposefully availed" himself of or "expressly aimed" his conduct towards North Carolina would necessarily "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). It would also open the door to the abandonment of due process protections in other settings where the State's interest is also compelling.

¶ 25        Our decision in this case addresses a unique situation characterized by a crucial fact: Wagner lacked any reason to know or suspect that Mucha had moved to and was present in North Carolina. Further, it also appears from the record that neither Mucha nor Wagner had any ties to North Carolina at all prior to Mucha moving to the state. In another case, it would likely alter the jurisdictional analysis if the defendant had called the plaintiff in North Carolina on a phone number linked to a physical address in North Carolina, *see, e.g., Hughs ex rel. Praul v. Cole*, 572

N.W.2d 747, 751 (Minn. Ct. App. 1997) (concluding Minnesota court had personal jurisdiction because "[t]he record indicates [the defendant] made repeated telephone calls to respondent's home" in Minnesota while maintaining a relationship with his son who lived there), if the defendant had reason to anticipate that the plaintiff would travel to or "seek refuge" in North Carolina, *Becker*, 937 So. 2d at 1131, or if the prior relationship between the defendant and the plaintiff began in or significantly involved the State of North Carolina.

¶ 26 Having determined that the trial court lacked personal jurisdiction over Wagner, we now consider Mucha's argument that the trial court did not need to have personal jurisdiction over Wagner to enter a DVPO against him.

**B. The "status exception" to personal jurisdiction**

¶ 27 Mucha next argues that even if Wagner did not establish minimum contacts with the State of North Carolina, the trial court could permissibly bind him through entry of the DVPO by applying the "status exception" doctrine. As we recently explained,

> The Supreme Court of the United States has long recognized that some cases warrant an exception to the traditional due process requirements. Specifically, the Court has held that 'cases involving the personal status of the plaintiff, such as divorce actions, could be adjudicated in the plaintiff's home State even though the defendant could not be served within the State.' *Shaffer v. Heitner*, 433 U.S. 186, 202, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (citing *Pennoyer v. Neff*, 95 U.S. 714, 733–35, 24 L.Ed. 565 (1878)). The Court's recognition of the status exception

> implies that minimum contacts are not required in status
> cases because jurisdiction is established by the status of
> the plaintiff, rather than the location of the defendant.

*In re F.S.T.Y.*, 374 N.C. 532, 538 (2020). Thus, in *In re F.S.T.Y.*, we concluded that

the State's interest in protecting the welfare of children residing in North Carolina,

combined with the procedural protections afforded to litigants in termination

proceedings (including the right to appointed counsel), justified allowing a North

Carolina court to enter an order terminating the parental rights of an out-of-state

parent of a resident child, even though the parent lacked "minimum contacts" with

this State. *Id.* at 541. The Court of Appeals has also recognized the status exception

in divorce cases. *See, e.g.*, *Chamberlin v. Chamberlin*, 70 N.C. App. 474, *disc. review

denied*, 312 N.C. 621 (1984). According to Mucha, "[b]ecause th[is] case focuses on the

status of the relationship between the plaintiff and the defendant, as opposed to

focusing on the defendant alone, the plaintiff's connection to the forum state is itself

enough to justify the exercise of jurisdiction as a matter of due process."

¶ 28        Although some state courts have chosen to recognize the status exception in

the domestic violence context, *see, e.g.*, *Bartsch v. Bartsch*, 636 N.W. 2d. 3 (Iowa 2001),

we decline Mucha's invitation to do so here for two reasons. First, there is a significant

conceptual distinction between termination-of-parental-rights and divorce

proceedings on the one hand and a domestic violence proceeding on the other. When

a trial court terminates an individual's parental rights or a marriage, the court acts

to dissolve an extant legal relationship. An order dissolving an individual's legal identity as a parent or spouse is not itself the source of new rights or duties—it is merely "a declaration of status." *Fox*, 2014 VT at ¶ 17. By contrast, when a trial court enters a DVPO, the court creates a "status" which did not previously exist and then invokes that newly-created status to "prohibit[ the defendant] from engaging in behavior that would be entirely legal but for the court's order." *Id.* at ¶ 19. Mucha concedes as much when she asserts that a DVPO "grants the plaintiff a protected status vis-à-vis the defendant." This distinction between dissolving a legal status that already exists and creating a new status with new legal consequences is a significant one, which explains why a court may find jurisdiction in the absence of minimum contacts to accomplish the former but not the latter.

¶ 29 Second, as the Court of Appeals explained in *Mannise v. Harrell*, "the issuance of a [DVPO] implicates substantial rights of [d]efendant[s]." 249 N.C. App. 322, 332 (2016). When a trial court enters a DVPO, the court may, in addition to prohibiting the defendant from engaging in future acts of domestic violence, impose various obligations on the defendant, such as requiring the defendant to vacate his or her home and granting the complainant possession of any shared residences or personal property. N.C.G.S. § 50B-3(a)(2), (5) (2019). The trial court may restrain the defendant from exercising his or her constitutional rights, including the right to

purchase a firearm, N.C.G.S. § 50B-3(a)(11).[6] In addition, "[t]he entry of a North Carolina [DVPO] involves both legal and non-legal collateral consequences," which cannot easily be undone. *Mannise*, 249 N.C. App. at 332.

¶ 30    The fact that a DVPO creates significant legal consequences is, of course, not an accident. These consequences are precisely what the General Assembly has deemed are necessary to protect victims of domestic violence from further harassment, abuse, or worse. But the power and reach of a DVPO also heighten the fairness concerns which arise when a trial court chooses to act outside of the typical boundaries imposed by the Due Process Clause. For these reasons, we conclude that the status exception should not be extended to this case.

¶ 31    Although our decision deprives Mucha of one avenue for obtaining protection against further harassment, she is not without a remedy. She may seek a DVPO in any court with personal jurisdiction over Wagner, including his home state of Connecticut, which if granted would be fully enforceable in North Carolina. *See* 18 U.S.C. § 2265(a). In addition, we note that upon receiving notice of Mucha's filing in North Carolina, Wagner became aware Mucha was residing in this State. Accordingly, in a subsequent proceeding if the alleged harassment continued, it is doubtful Wagner could successfully defeat the trial court's exercise of personal

---

[6] Under federal law, it is unlawful for any person subject to a DVPO to purchase or possess a firearm. 18 U.S.C. § 922(g)(8).

jurisdiction on the same grounds as asserted in the proceedings below.

## III.  Conclusion

"[T]raditional notions of fair play and substantial justice" require something more than proof that an out-of-state defendant has directed conduct at an individual who happened to be located in North Carolina. *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). At a minimum, there must be some evidence from which the court can infer that in undertaking an act, the defendant purposefully established contacts with the State of North Carolina specifically. The question is not, as the Court of Appeals framed it, whether Wagner should have reasonably understood the risk that Mucha would be located somewhere other than South Carolina when he chose to dial her cellphone number. The question is whether Wagner had "followed a course of conduct directed at the society or economy existing within" North Carolina, such that a North Carolina court "has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Mach., Ltd.*, 564 U.S. at 884. Because the requisite minimum contacts between Wagner and North Carolina are not present in this case, we conclude that the Due Process Clause forbids the trial court from exercising personal jurisdiction over him to enter a DVPO. Therefore, we reverse the Court of Appeals decision in this case and vacate the trial court's order for lack of jurisdiction.

REVERSED.